**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
MICHAEL JOHN HURLEY,

                    *Pro Se* Plaintiff,

               -against-

TOWN OF SOUTHAMPTON, SOUTHAMPTON
TOWN CODE ENFORCEMENT OFFICER
KENNETH GLOGG, SOUTHAMPTON TOWN
CODE ENFORCEMENT OFFICER RICARDO
LARIOS, SOUTHAMPTON TOWN LICENSE
REVIEW BOARD MEMBERS, JOHN and JANE
DOES 1-5,

                    Defendants.
-------------------------------------------------------------X

               **REPORT AND**
               <u>**RECOMMENDATION**</u>

               CV 17-5543 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    <u>P<span style="font-size:smaller">RELIMINARY</span> S<span style="font-size:smaller">TATEMENT</span></u>

       *Pro se* Plaintiff Michael John Hurley ("Plaintiff") brings this civil rights action against

Defendants Town of Southampton ("the Town"), Southampton Town Code Enforcement Officer

Kenneth Glogg ("Glogg"), Southampton Town Code Enforcement Officer Ricardo Larios

("Larios"), and Southampton Town License Review Board ("the Board") Members John and

Jane Does 1-5 (collectively, "Defendants").  Plaintiff asserts various constitutional claims under

42 U.S.C. § 1983, including violations of his rights under the First, Fourth, Fifth, and Fourteenth

Amendments to the United States Constitution, as well as myriad other claims, arising from

Defendants' alleged conduct in enforcing a Town ordinance that regulates the ability of property

owners to rent out their property.  *See generally* Plaintiff's Complaint ("Compl.") [DE 1].

On February 26, 2018, Defendants filed a motion to dismiss Plaintiff's Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Defendants' Motion to Dismiss ("Defs.' Mot.") [DE 20]; Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") [DE 20-17]. Plaintiff opposes the motion. *See generally* Plaintiff's Memorandum in Opposition ("Pl.'s Opp'n.") [DE 22]; Plaintiff's "Preliminary Statement" in Opposition ("Pl.'s Prelim. Stat. in Opp'n.") [DE 22-1].[1] Judge Seybert has referred the motion to this Court for a Report and Recommendation as to whether it should be granted. *See* DE 25. For the reasons which follow, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss be GRANTED, in part, and DENIED, in part.

## II.    BACKGROUND

### A.    Facts Alleged in the Complaint[2]

The Court takes the following allegations from Plaintiff's Complaint and accepts them as true for purposes of the instant motion. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013). The allegations in the Complaint are not presented chronologically. The Court summarizes and distills the allegations based on its review of the Plaintiff's submissions.

---

[1]  Plaintiff submits two documents in opposition: a five-page "Memorandum in Opposition" with attachments, and a nine-page "Preliminary Statement" also in opposition, with attachments.

[2]  Because the allegations in the Complaint are not organized in consecutively numbered paragraphs throughout, the Court's citations to the Complaint are made by page number, beginning with the portion of the Complaint that runs consecutively from page 2 through page 18. When citing to Plaintiff's motion papers, the Court adopts the same practice.

### 1.  *Plaintiff Obtains a Rental Permit*

Plaintiff is a 56 year-old disabled carpenter who owns property located at 28 Club Lane in the Town of Southampton, New York ("the Property").  Compl. at 2.  The Property was designed to bring Plaintiff rental income in his retirement.  *Id*. at 8.  Between 1996 and 2010, Plaintiff successfully (and apparently without incident) rented the Property to an individual named David Smith and his family as a summer rental.  *Id.* at 2.  However, Plaintiff alleges that in August 2011, after a tenant called the Town Building Department to complain about construction noise emanating from a neighbor's property,[3] a Town building inspector named Sean McDermott informed Plaintiff that he needed to obtain a rental permit from the Town in order to continue to rent out his property.  *Id*.  In 2012, Plaintiff filed an application for a rental permit, which he received at the end of 2013.  *Id*.  Plaintiff states that around the same time, he completed interior and exterior upgrades of the Property at a cost of $10,000.00.  *Id*.  The Complaint alleges that in "December of 2015 Southampton Town Code Enforcement Officer Ken Glogg inspected [the Property] and Plaintiff renewed the rental permit in 2016 that remain[ed] valid until January of 2018."[4]  *Id*.

---

[3]  In his Memorandum in Opposition to the instant motion, Plaintiff states that "the nature of the complaint was the construction dust blowing onto 28 Club Lane, Remsenburg, New York, and contrary to the Towns [*sic*] opinion, was not a neighbor calling to complain about noise and mayhem."  Pl.'s Opp'n. at 2.  The actual Complaint Form, attached to Plaintiff's motion papers, indicates the complainant was a tenant at 28 Club Lane, and the "Location of Complaint" is listed at 32 Club Lane.  *Id*., Ex. B.

[4]  At least two other passages of the Complaint contradict the assertion made by Plaintiff that he had a valid rental permit through January 2018:  Plaintiff asserts that he "applied for a permit renewal on July-28-2017 and his application *was not* accepted or renewed by Southampton town Code Enforcement Officer Ken Glogg."  Compl. at 2-3 (emphasis added).  In another portion of his Complaint, Plaintiff states "[o]n May 5, 2017, the valid Rental Permit of the Plaintiff was revoked by the Town Attorney's Office without adjudication."  *Id*. at 10.

### 2. *2015 Prosecution of Plaintiff*

Plaintiff states that beginning in August 2011 and extending through 2017, Defendants "knowingly and unconstitutionally charged Plaintiff with numerous offenses," despite Plaintiff's good faith efforts to comply with Town rules and regulations and allowing "no less than ten physical inspections to obtain the rental permit." Compl. at 5-6. According to the Complaint, "[t]he main thrust of the Town's prosecution of the Plaintiff [was] for the violation of the Town's transient rental law, Chapter 270 Sub-division 9C which prohibits rentals of less than 14 days." *Id*. at 14. Plaintiff states that in October 2015, he entered into a settlement agreement with the Town to settle the Town's criminal prosecution of him for "the transient rental violations alleged by the Town up to October of 2015. The Plaintiff agreed to pay a 27,000 dollar fine to Southampton town to settle all charges." *Id*. at 9. In November 2015, Plaintiff states he was arrested without cause when a Town Police Officer and Code Enforcement Officers Glogg and Larios appeared at his home. *Id*. He was detained until the Town Attorney ordered his release without charging him. *Id*. According to the Plaintiff, Glogg and Larios "raced to the Police Department to gloat in the parking lot as the Plaintiff was led into the Police Department in handcuffs." *Id*.

### 3. *2017 Prosecution of Plaintiff*

Although it is not clear exactly when the conduct began, or whether it was a continuation of his previous prosecution, Plaintiff complains of mistreatment and unlawful prosecution by the Town in 2017. Plaintiff states that on May 5, 2017, the Town Attorney demanded that Plaintiff plead guilty to two appearance tickets, numbers 4672 and 4673, threatening to revoke Plaintiff's rental permit if he did not do so. Compl. at 10. On that day, Plaintiff did not plead guilty, and "the valid Rental Permit of the Plaintiff was revoked by the Town Attorney's Office without

adjudication." *Id*. Around this time, the Town Attorney also "explained to the Plaintiff that he was going to face 4 counts and that he could face 2 years in jail if convicted." *Id*. at 12.

In June 2017, a settlement conference was held between Plaintiff and the Town. Compl. at 10. At this conference, Plaintiff alleges he was "denied relevant legal counsel" because the court did not allow his "legal consultant," in addition to his attorney, to attend the conference via speakerphone. *Id*. The court also denied Plaintiff's request to have his property manager present at the conference. *Id*. Despite this, Plaintiff states that he and his attorney felt confident that he and the Town had reached a settlement as a result of the conference. *Id*. at 11. To Plaintiff's dismay, shortly after the conference, the Town Attorney indicated the deal "was off the table" and the case would be prosecuted to trial. *Id*. Plaintiff states the Town Attorney was "determined to take the Plaintiff to trial while denying the Plaintiff full discovery of evidence held by the prosecution." *Id*.

According to the Plaintiff, "Glogg and Larios continuously and constantly trespassed on the Plaintiff's private property without reason or probable cause over the course of the last 6 years. There is only one Police report from the [P]roperty in the last twenty years of summer rentals." Compl. at 11. Plaintiff asserts that the only evidence the Town had to prosecute him consisted of the "coerced" affidavits signed by his tenants while under duress, which, Plaintiff claims, were not notarized. *Id*. In support of these allegations, Plaintiff states that on July 16, 2017, while he was engaged in his defense against the Town, Code Enforcement Officer Larios "forced his way into [the Property]" while Plaintiff was installing a stove for his tenant and "coerced [his tenant] into signing a preformed affidavit by threatening her with eviction." *Id*. at 9.

Plaintiff states that on June 27, 2017, he and his attorney faxed to the Town Court a request to adjourn his trial. Compl. at 12. This request was allegedly "ignored" by the Town Attorney. *Id*. Two days later on June 29, 2017, the Town Court issued a bench warrant for Plaintiff's non-appearance at a hearing related to his case. *Id*. Plaintiff appears to blame the Town Attorney for his non-appearance, stating the Town Attorney's office failed to "fulfill their duty to update [Plaintiff] on the status of his case in a timely fashion." *Id*. The Court declined to withdraw the warrant despite a request by Plaintiff's attorney. *Id*.

Plaintiff claims that on July 11, 2017, he served on the Town two motions to dismiss all of the pending charges, which were allegedly "ignored by the Court and the Town Attorney." Compl. at 11. On July 17, 2017, Plaintiff was allegedly "arrested in court next to his attorney for the second time in 3 years. The first time Plaintiff was able to post the 4,000 dollar bail which is still held by the town for the last 3 years. On July 17, 2017 due to the revocation of his valid rental permit the Plaintiff was not offered bail and was not able to provide bail to the Court." *Id*. at 13. As a result, he served 15 days in the Suffolk County Correctional Facility. *Id*. The Complaint also appears to assert that, as a result of this series of events, he paid a fine of $15,000. *See id*. at 4. According to Plaintiff, while he was incarcerated, his sister's family stayed at the Property, during which time Code Enforcement Officer Glogg appeared at the Property to harass them. *Id*. at 6, 13. Glogg allegedly appeared again for the same purpose on September 2, 2017. *Id*.

Plaintiff claims that the Town's pattern of prosecutorial harassment has continued until as recently as September 18, 2017, when Plaintiff received two additional "vague" summonses in the mail, stating that he must appear in court on October 13, 2017 to answer more charges for

rental violations.[5]  Compl. at 13.  Plaintiff asserts that the Town's repetitive harassment and

prosecution of him for violating the Town's transient rental law amounts to "selective

enforcement."  *Id*. at 14.  Plaintiff's conclusion is based on his belief that there are numerous

other rentals available on various websites that offer short term rentals in the Town for less than

the minimum two weeks.  *Id*.  Plaintiff refers to one individual with whom he is acquainted who

has purportedly been served "11 violations for violating the Town rental codes during the

summer of 2016.  This individual . . . had all of his violations dismissed in June of 2017."  *Id*.

According to the Complaint, Plaintiff has been "singled out among 1,000 similarly situated

homes in the jurisdiction of the Town."  *Id*.

### 4.  *License Review Board*

Two weeks before his trial, Plaintiff states he appeared before the Southampton Town

License Review Board to appeal the rental permit revocation "and ask for the mandatory stay

that is granted to the Permit holders under N.Y. State Law."[6]  Compl. at 10.  "[D]espite

numerous emails between the Plaintiff and Deborah Dillon of the License Review Board the

Plaintiff was denied the transcripts from the appeal hearing."  *Id*. at 11.  The members of the

License Review Board allegedly acted "in cooperation with, or in conjunction with[,] the Town

and its attorneys" to harass and deceive the Plaintiff.  *Id*. at 17.

---

[5]  Plaintiff also filed an "addendum" to his Complaint on October 11, 2018, referencing these two additional summonses.  *See* Addendum to Complaint ("Compl. Add.") [DE 12].

[6]  According to the written decision of the License Review Board, attached as Exhibit K to Defendants' Declaration in Support of their Motion, this hearing took place on July 12, 2017. *See* DE 20-15.

### 5.     *Other Alleged Misconduct*

In addition to his prosecution by the Town, Plaintiff alleges multiple incidents of misconduct at the hands of Town Code Enforcement officers between 2011 and 2017, which he asserts amount to "tortious interference" with his tenant relationships.  Compl. at 7.  Plaintiff asserts that in August 2013, one of his tenants, Bruce Shneider, and his children, were forcibly evicted from the Property "without a signed consent order from a Judge."  *Id*.  Mr. Schneider and his children are Orthodox Jews, and Plaintiff claims that their "eviction" at the hands of the Defendants forced them to "drive cars on the Sabbath which violated their right to freely assemble and practice their religion."  *Id.*

Similarly, on June 20, 2017, Plaintiff states he entered into a two-week lease with an individual named Patricia Olvany, who, along with her family, was evicted from the Property by Town Code Enforcement officers.  Compl. at 8.  As a result, Patricia Olvany issued a "stop payment" on the check deposited by the Plaintiff in consideration for the lease.  *Id*.  In addition, Plaintiff alleges that on September 3, 2017, he had to "extricate himself" from a one-year lease with a tenant named Jorge A. Espana because "[t]he Plaintiff was intimidated and fearful by the presence of Code Enforcement Officer Glogg on his property on September 2, 2017.  This resulted in an economic loss of 42,000 dollars to the Plaintiff."  *Id*.  Plaintiff also asserts that "[o]n March 1, 2017 [he] signed a legally binding contract with Matteo Patisso, President of Hampton Luxury Rentals . . . . His service was to provide Southampton Town code compliant tenants for the Plaintiff."  *Id*.

Based on the conduct of Defendants, in addition to the fees and costs associated with his prosecution, Plaintiff states he has lost his source of retirement income, and "has been forced by

the actions of Southampton Town to list his property for sale to avoid foreclosure and bankruptcy proceedings." Compl. at 8.

### B.    Relevant Procedural History

Plaintiff filed his Complaint on September 21, 2017. *See* DE 1. On October 11, 2018, he filed what he has titled an "addendum" to his Complaint. *See* DE 12. On October 30, 2018, the Court granted Defendants a 45-day extension to answer or otherwise respond to the Complaint. *See* DE 14. Defendants subsequently requested, and were granted, a pre-motion conference before Judge Seybert for purposes of moving to dismiss the Complaint. That conference was held on January 12, 2018. *See* DE 19. Defendants' motion to dismiss was filed on February 26, 2018, *see* DE 20, Plaintiff's opposition was filed on April 12, 2018, *see* DE 22, and Defendants' reply was filed on May 17, 2017. *See* DE 23, 28. On April 25, 2018, Judge Seybert referred Defendants' motion to dismiss to this Court for a Report and Recommendation as to whether it should be granted. *See* DE 25.

## III.    <u>STANDARD OF REVIEW</u>

At the outset, the Court observes that *pro se* filings like Plaintiff's Complaint are to be liberally construed. *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir. 1994)). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive

law." *Lomax v. Aegis Funding Corp.*, No. 9-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002)). Likewise, "mere conclusions of law or unwarranted deductions need not be accepted." *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014).

That being said, the general standard of review pursuant to a Rule 12(b)(6) motion to dismiss remains applicable:  the Court must liberally construe the claims set forth in the complaint, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Which is to say, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  First, district courts are to "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'").  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 678 (citations omitted).

## IV.    PRELIMINARY ISSUE:  CONSIDERATION OF SUPPORTING DOCUMENTATION

Both Plaintiff and Defendants have submitted supporting documents as exhibits to their motion papers.  In addition to 164 pages of attachments to his Complaint, Plaintiff has annexed to his "Memorandum in Opposition" eight exhibits, labeled A – H.  Likewise, Plaintiff has attached 12 exhibits, labeled A – L, to his "Preliminary Statement" in Opposition.

With regard to the exhibits attached to his Memorandum in Opposition, Plaintiff's Exhibit A is a newspaper article regarding a 2016 lawsuit against the Town of East Hampton that makes reference to Defendant Glogg.  *See* Pl.'s Opp'n., Ex. A.  Exhibit B is a Town of Southampton Complaint Form issued against the Property in 2011.  *See id*., Ex. B.  Exhibits C, D, and E are photocopies of Chase Bank transactions, with copies of checks written by Michael J. Hurley for various amounts.  *See id*., Exs. C – E.  Exhibits F and G are attorney affirmations made on behalf of the Town in litigation against Plaintiff in New York State Supreme Court.  *See id*., Exs. F, G.  Exhibit H is a copy of a "2 Year Rental Permit" issued by the Town to Michael Hurley on January 10, 2016.  *See id*., Ex. H.  As to the exhibits attached to his Preliminary

Statement in Opposition, all of Plaintiff's exhibits are either media articles or copies of legislation, legislative materials, or case law. *See* Pl.'s Prelim. Stat. in Opp'n., Ex. A – L.

In support of their motion, Defendants have submitted the following 12 exhibits: Exhibit A is the Complaint in this action; Exhibits B, C, D, E, G, and J are appearance tickets and an arrest report related to the Property; Exhibit F is a "Rental Permit Affidavit;" Exhibit H is a Southampton Town Court Bench Warrant; Exhibit I is a stipulation of settlement between the Town and Plaintiff in New York State Supreme Court; Exhibit K is a decision by the Town License Review Board dated July 12, 2017; and Exhibit L is an Order of Conditional Discharge filed in New York State Supreme Court. *See* Defendants' Declaration in Support of their Motion to Dismiss ("Defs.' Decl.") [DE 20-1] at 2; *id.*, Exs. A – L. Defendants attach to their reply memorandum an additional exhibit, Exhibit M, which is a copy of Town of Southampton Local Law § 40-2007, adopted August 23, 2007. *See* Defendants' Reply Declaration ("Defs.' Repl. Decl.") [DE 27] at 1; *id.*, Ex. M.

In adjudicating a Rule 12(b)(6) motion, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied upon heavily in the complaint and, thus, are rendered "integral" to the complaint. *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). To the extent "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007).

Notwithstanding the parties' submission of supporting documentation, the Court does not find conversion to a Rule 56 motion to be necessary here. Rather, as to Plaintiff's submissions, the Court takes judicial notice of those exhibits constituting public records or legal authority. *See Awelewa v. New York City*, No. 11 CIV. 778, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) ("Judicial notice may be taken of public records, including 'arrest reports, criminal complaints, indictments, and criminal disposition data.'") (quoting *Wims v. New York City Police Dep't,* No. 10 Civ. 6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011)). The Court determines that Plaintiff's (first) Exhibit H, a Town rental permit issued to Plaintiff, is sufficiently relied upon in the Complaint to be considered. The remainder of Plaintiff's exhibits -- Chase Bank statements and media articles -- are outside the scope of the instant motion, and as such the Court declines to consider them.

With regard to Defendants' submissions, each exhibit falls properly within the scope of the instant motion as either an appearance ticket, a decision of an administrative agency, a court filing, or other public record of which the Court may take judicial notice, or, as a document relied upon heavily in and thus "integral" to the Complaint. *See Awelewa*, 2012 WL 601119, at *2; *Chambers*, 282 F.3d at 152-53.

## V.   DISCUSSION

### A.    Determining What Claims Plaintiff Asserts

Plaintiff's Complaint is filled with references to constitutional and statutory provisions, as well as what appear to be quasi-legal theories. With regard to his constitutional claims, Plaintiff states that he "files this complaint under 42 USC 1983 alleging violations of the Fourteenth Amendment including but not limited to the Equal Protection and Due Process Clauses and the First, Fourth, [and] Fifth Amendments." Compl. at 5. The Complaint then

asserts a claim under the Fair Housing Act -- Plaintiff claims that "[t]he independent and negligent actions of the Town's Officials interfered with the civil rights and liberties of the Plaintiff who is protected under 42 USC 3604 and 3617 of The Fair Housing Act." *Id*. at 5; *see id*. at 6. Plaintiff also includes eight "counts" asserting additional causes of action: Tortious Interference (Count I); Malicious Intent (Count II); Obstruction of Justice (Count III); Abuse of Power (Count IV); Harassment (Count V); Selective Enforcement (Count VI); Infliction of Emotional Distress (Count VII); and Theft of Property (Count VIII). *Id*. at 1, 7-16. The Court will address each of Plaintiff's purported claims and whether the facts as alleged in his Complaint are sufficient to state a legally cognizable claim under any of the theories he presents.

**B.     The Substance of Plaintiff's Claims**

As outlined, Plaintiff's Complaint purports to assert claims arising under both federal and state law. The Court will examine each cause of action to determine if the allegations adequately state a cognizable claim, beginning with his federal constitutional and statutory claims.

**1.     *Claims Arising Under Federal Law***

**i.     First Amendment[7]**

Plaintiff purports to assert a claim under Section 1983 for violations of the First Amendment. *See* Compl. at 1, 2. The claim appears to be based on what Plaintiff characterizes as the "unconstitutional eviction" of his tenants, "who were forced to vacate the Plaintiffs [*sic*] property on the Sabbath which violated the tenants [*sic*] right to practice their religion free from government interference." *Id*. at 4.

_____

[7]  Plaintiff also references the language of the First Amendment on page 5 of the Complaint, where he states "Southampton Town is violating US Constitutional Law of Peaceful Assembly by restricting the time duration of the rental property while disregarding the quality and character of the rental." Compl. at 5. The Court addresses the viability of such a facial challenge to the transient rental law in a subsequent section.

As a threshold matter, "[t]o have standing to pursue a claimed violation of the Free Exercise Clause, a plaintiff must allege that her own 'particular religious freedoms are infringed.'" *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 71 (2d Cir. 2001) (quoting *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 224 n.9 (1963)); *Mincone v. Nassau Cty. Cmty. Coll.*, 923 F. Supp. 398, 405 (E.D.N.Y. 1996). Since the Complaint lacks any allegation that Plaintiff's religious freedom was infringed, or any allegation with respect to Plaintiff's religion at all, Plaintiff does not have standing to assert a First Amendment free exercise claim. *See McGowan v. State of Md.*, 366 U.S. 420, 429 (1961) (holding that appellants who did not raise allegations as to their religious beliefs could not sustain a free exercise claim "[s]ince the general rule is that a litigant may only assert *his own* constitutional rights or immunities") (emphasis added); *see Schempp*, 374 U.S. at 224 n.9. *See also Veronese v. Malloy*, No. 1:11-CV-1243, 2011 WL 6012023, at *2 (N.D.N.Y. Oct. 21, 2011), *report and recommendation adopted*, No. 1:11-CV-1243, 2011 WL 6012011 (N.D.N.Y. Dec. 1, 2011) ("Derivative claims . . . are not cognizable [under Section 1983] because they do not involve an injury based on a deprivation of the plaintiff's rights, privileges, and immunities.") (quotations omitted); *Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 359 (N.D.N.Y. 2008), *aff'd*, 331 Fed. App'x. 894 (2d Cir. 2009) ("In the absence of a cognizable § 1983 claim, the derivative claim is dismissed."); *Campos v. Weissman,* No. 9:07-CV-1263, 2009 WL 7771872, at *5 (N.D.N.Y. Sept. 10, 2009), *report and recommendation adopted*, No. 9:07-CV-1263, 2011 WL 1204839 (N.D.N.Y. Mar. 29, 2011) ("It is clear that derivative claims . . . are not cognizable under § 1983 since such claims do not involve an injury based on a deprivation of the plaintiff's rights, privileges, and immunities.") (quotations omitted).

Defendants read Plaintiff's First Amendment allegations to assert an intimate association claim. They argue that since Plaintiff's relationships with his tenants were business relationships, no such claim is viable. *See* Defs.' Mem. at 18-19. To the extent Plaintiff is attempting to assert such a claim, the Court agrees with the Defendants' argument.[8] The right to intimate association guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the government. *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). However, "[t]he Constitution does not recognize a generalized right of social association. The right [of intimate association] generally will not apply, for example, to business relationships." *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997); *Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York*, 502 F.3d 136, 144 (2d Cir. 2007) ("The right to intimate association reflects the realization that individuals draw much of their emotional enrichment from close ties with others . . . . The relationships that have been afforded the most vigorous protection include those involved in the creation and sustenance of a family – namely marriage, the begetting, raising, and education of children, and cohabitation with relatives.") (quotations omitted). Since Plaintiff has not alleged that he shared a familial or otherwise close emotional relationship with his tenants, the right of intimate association is inapplicable to Plaintiff's circumstances.

---

[8] The Second Circuit has observed that "[t]he source of the intimate association right has not been authoritatively determined. Language in [*Roberts v. United States Jaycees*, 468 U.S. 609 (1984)] suggests that this right is a component of the personal liberty protected by the Due Process Clause. However, in [*City of Dallas v. Stanglin*, 490 U.S. 19 (1989)], the Court cited the First Amendment as 'embrac[ing]' a right of association that included the two elements identified in *Roberts,* intimate association and expressive association." *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999). Relying on *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), the Southern District of New York has found "[t]he right to intimate association . . . in the free association clause of the First Amendment." *Bibb v. New York City Hous. Auth.*, No. 09 CIV. 9956, 2010 WL 3958646, at *3 (S.D.N.Y. Sept. 30, 2010).

Based on the foregoing analysis, the Court respectfully recommends to Judge Seybert that Plaintiff's Section 1983 claim asserting violations of his rights under the First Amendment be dismissed.

### ii.      Fifth Amendment Due Process

Although not entirely clear, Plaintiff appears to allege due process violations under the Fifth Amendment relating to, *inter alia*, the alleged denial of a fair trial, deprivation of his property rights and rental permit, and his incarceration. *See, e.g.*, Compl. at 4, 5. "[T]he Due Process Clause of the Fifth Amendment only applies to actions by the Federal Government." *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 288 (E.D.N.Y. 2010). All of the allegations in the Complaint are directed at a local municipality, the Town of Southampton, along with Town officials and employees. There is not a single allegation claiming any violative conduct by the federal government or a federal government employee. Consequently, Plaintiff has not stated the key element of a claim under the Fifth Amendment, and the Court respectfully recommends to Judge Seybert that any claim asserting violations of Plaintiff's rights under the Fifth Amendment be dismissed.

### iii.      Fourteenth Amendment Equal Protection

On the first page of his Complaint, Plaintiff lists "Count Six: Selective Enforcement." Compl. at 1. Later in the pleading, Plaintiff alleges he has been unfairly singled out for violation of "the Town's transient rental law, Chapter 270 Sub-division 9C." *Id.* at 14. The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [courts] have long recognized that the

equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Plaintiff has not alleged that he is a member of a protected class. In the absence of such an allegation, there are two types of claims available under the Equal Protection Clause of the Fourteenth Amendment: "class-of-one" claims and "selective enforcement" claims. *DePrima v. City of New York Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (citing *Martine's Serv. Ctr., Inc. v. Town of Wallkill*, 554 Fed. App'x. 32, 34 (2d Cir. 2014)).

Although Plaintiff's "Count VI" is titled "Selective Enforcement," given Plaintiff's *pro se* status, the Court will examine his allegations assuming he intended to plead both a class-of-one and a selective enforcement equal protection claim.

### a. Class-of-One

In order to survive a motion to dismiss, a plaintiff pleading a "class-of-one" equal protection claim must plausibly allege that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (citing *Ruston v. Town Bd. for Skaneateles,* 610 F.3d 55, 60 (2d Cir. 2010)). The Second Circuit has held "that a class-of-one claim requires a plaintiff to show an extremely high degree of similarity between itself and its comparators." *Feiner*, 694 F.3d at 222 (citing *Ruston*, 610 F.3d at 60). For pleading purposes, this is the functional equivalent of alleging that a plaintiff and comparator are "*prima facie* identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005),

*overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (quoting *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)). There is also a third component of a class-of-one claim: a plaintiff must sufficiently allege that the difference in treatment "was not based on a discretionary or subjective decision." *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 255 (E.D.N.Y. 2010), *on reconsideration in part*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011).

Defendants contend that Plaintiff's Complaint fails to allege any comparators who were treated differently. *See* Defs.' Mem. at 16. They argue that while Plaintiff "attempts to use a list he pulled off the homeaway.com website as proof of the Town's selective enforcement," the list "does not indicate whether the Town cited these properties for impermissible use of their rental properties, or whether the property owners had valid rental permits." *Id.* Neither of Plaintiff's documents filed in opposition to the instant motion address this contention. Rather, as to this list, Plaintiff states that "[a]n internet search was performed on February 8, 2018 regarding rental properties in this area. The website 'Home-away' had a total of 2152 short-term vacation rentals listed, ranging in stays from three (3) to seven (7) nights. If these homes were advertised as fourteen (14) day minimum rentals, there would be no traffic to their information." Pl.'s Opp'n. at 5.

To the extent the Complaint alleges that Plaintiff was treated differently from other property owners in the Town, he advances two primary arguments: (1) there are "perhaps 1,000" short term rentals available on various websites; and (2) the Town "allowed with permission [an unnamed property owner Plaintiff calls "Mr. Pines"] to rent his property in violation of the Town's transient rental law in 2017 and . . . [Mr. Pines] was not summoned to Town Court in

2017 for any violations." Compl. at 14. Plaintiff also alleges that the Town Attorney has stated "many are not complying" with the transient rental law. *Id.*

The Court concludes that these allegations do not satisfy the "extremely high" burden that a class-of-one plaintiff must necessarily meet. *Feiner*, 694 F.3d at 222 (citing *Ruston*, 610 F.3d at 60). Plaintiff has identified one property owner who allegedly is similarly situated, namely, "Mr. Pines." However, Plaintiff fails to allege with any specificity the nature of Mr. Pines' "11 violations" which were "dismissed" in 2017 -- the implication being that they were improperly dismissed. *See* Compl. at 14. Nor does Plaintiff allege with any particularity whatsoever how Mr. Pines was permitted to "rent his property in violation of the Town's transient rental law in 2017." *Id.* Perhaps more important is the failure of the Complaint to allege *anything* as to Mr. Pines' property vis-à-vis Plaintiff's. And to the extent Plaintiff attempts to support his claims by general references to the number of rentals on the internet that allegedly violate the transient rental law, these general assertions are insufficient to plausibly suggest that Plaintiff has suffered a deprivation of his equal protection rights. Even when read in a generous light, Plaintiff's Complaint fails to allege that there is a comparator so similar to Plaintiff that "no rational person could regard the circumstances of the plaintiff to differ from those of [the] comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Joglo Realties, Inc. v. Seggos*, No. 16-CV-1666, 2016 WL 4491409, at *8 (E.D.N.Y. Aug. 24, 2016) (quoting *Ruston*, 610 F.3d at 60).

As noted above, in addition to alleging differential treatment between individuals similarly situated to an "extremely high degree," a class-of-one plaintiff must plausibly allege

that his or her treatment resulted from non-discretionary state action. *See Mangino*, 739 F. Supp.

2d at 255. As the Supreme Court stated in *Engquist v. Oregon Department of Agriculture*,

> [t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

553 U.S. 591, 603 (2008). In *Engquist*, the Supreme Court discussed this principle at length in

the context of traffic tickets. As the Court explained,

> assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself—the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

*Id.* at 603-04.

Based on the facts alleged in the instant Complaint, Plaintiff has failed to state that his

citations and prosecution for violation of the Town code were the result of anything other than

discretionary government action. *See Mangino*, 739 F. Supp. 2d at 257; *Casciani v. Nesbitt*, 659

F. Supp. 2d 427, 457 (W.D.N.Y. 2009), *aff'd*, 392 Fed. App'x. 887 (2d Cir. 2010) ("Even after

the ordinance was passed, any action taken by the Town to enforce the ordinance was necessarily

discretionary.").  For this reason, and in light of Plaintiff's inability to adequately allege the existence of a similarly situated comparator, Plaintiff has failed to state a claim for violation of his Fourteenth Amendment Equal Protection rights under a class-of-one theory.

### b.    *Selective Enforcement*

In order to successfully plead a selective enforcement claim, a plaintiff must plausibly allege that (1) "compared with others similarly situated, [he or she] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992)).  "There is disagreement among the district courts in this circuit as to whether th[e] stringent standard articulated by the circuit for 'class of one' claims also applies to selective enforcement claims." *Joglo Realties, Inc.*, 2016 WL 4491409, at *9 (citing *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011)).  That is, courts have disagreed as to whether the same "similarly situated" standard, which in class-of-one claims requires the plaintiff and comparator to be "*prima facie* identical," applies to selective enforcement claims; or whether "as some courts have held, selective enforcement claims only require that the alleged comparators be 'similarly situated in all material respects.'" *DePrima*, 2014 WL 1155282, at *5 (quoting *Mosdos Chofetz Chaim, Inc.*, 815 F. Supp. 2d at 693).

The Court determines that, even under a more lenient standard, Plaintiff has not adequately alleged that he and any potential comparator are "similarly situated in all material respects." *Mosdos Chofetz Chaim, Inc.*, 815 F. Supp. 2d at 693.  Rather, assuming the truth of the allegations in the Complaint, the only thing Plaintiff has stated is that there are many rentals

on the internet that violate the transient rental law. This allegation does not give rise to an inference that these property owners have not been or will not be prosecuted for violating the ordinance in the same way as Plaintiff. Nor does this allegation lead to any inference that these properties share anything in common with Plaintiff's. Moreover, as noted with regard to "Mr. Pines," there are simply *no* allegations concerning his property vis-à-vis the Plaintiff's property, let alone enough to support an inference that the properties are "similarly situated in all material respects."

In addition to Plaintiff's pleading deficiencies as to the similarity between his property and potential comparators, the Complaint contains insufficient allegations to plausibly state that the Town, through its officials, was motivated by impermissible considerations, such as a "malicious or bad faith intent to injure" the Plaintiff. Nowhere does the Complaint assert "any facts that would explain what motive the [Town] might have had" for its alleged discriminatory treatment of Plaintiff. *Missere v. Gross*, 826 F. Supp. 2d 542, 565 (S.D.N.Y. 2011) (finding that even when alleging a municipality's previous opposition to a plaintiff's building projects and its preferential treatment of a competitor, the plaintiff was unable to plausibly allege that defendants were motivated by a "malicious or bad faith intent to injure"); *see Zahra*, 48 F.3d at 684 (noting that allegations of different treatment do not alone demonstrate malice); *LeClair v. Saunders*, 627 F.2d 606, 610-11 (2d Cir. 1980) (same). Rather, the Complaint is rife with conclusory assertions regarding Defendants' malicious intent to persecute the Plaintiff. *See, e.g.*, Compl. at 13 (alleging "Count Five: Harassment"). Such conclusory assertions are insufficient to sustain Plaintiff's selective enforcement claim.

Based on the foregoing analysis, the Court respectfully recommends to Judge Seybert that Plaintiff's claim alleging a deprivation of his rights under the Equal Protection Clause of the Fourteenth Amendment be dismissed.

### iv.     Fourth Amendment

Plaintiff's Complaint contains several allegations, which, to the extent they implicate any constitutional rights, implicate those protected by the Fourth Amendment.

### a.     *Malicious Prosecution*

In this category of claims, the Complaint most clearly attempts to plead malicious prosecution.  *See* Compl. at 9.  "The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—*i.e.,* the right to be free of unreasonable or unwarranted restraints on personal liberty."  *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).  To successfully plead a Section 1983 malicious prosecution claim alleging deprivations of Fourth Amendment rights, a plaintiff must plead the elements of malicious prosecution under state law.  *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).  Under New York law, to adequately plead a malicious prosecution claim, a plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).

Defendants argue that Plaintiff cannot sustain a malicious prosecution claim because

> a review of the record indicates that the [Plaintiff's] charges were not terminated in his favor.  Specifically, on July 17, 2017, the plaintiff entered a guilty plea to two counts of violating Town Code 270-9(C). (Exhibit 'L').  This of course followed the earlier Stipulation of Settlement that the plaintiff entered into on October

27, 2015 where he also pled guilty to various violations of the
Town's Rental code (Exhibit 'I').

Defs.' Mem. at 17.  While Plaintiff fails to plead that the criminal proceedings terminated in his

favor, the Court agrees with Defendants that, to the contrary, Plaintiff was convicted of violating

the transient rental law and other Town code provisions.[9]  Accordingly, the Court respectfully

recommends to Judge Seybert that Plaintiff's malicious prosecution claim be dismissed.

### b.    False Arrest

Plaintiff also pleads a claim for false arrest.  *See* Compl. at 9.  Specifically, Plaintiff

alleges that in November 2015, Glogg and Larios knocked on his door accompanied by a

Southampton Town Police Officer.  *Id.*  Plaintiff was subsequently arrested, brought to the Police

Department, and then released without being charged.  *Id.*  He claims this "was an unlawful,

illegal arrest perpetrated and conceived by Glogg and Larios in an effort to take the law into their

own hands to maliciously prosecute and harass the Plaintiff."[10]  *Id.*  Defendants do not address

---

[9]   The Court takes judicial notice of the following exhibits to the Declaration of Joshua
S. Shteierman, Esq., in Support of Defendants' Motion to Dismiss ("Defs' Decl.") [DE 20-1]:
Exhibit I (October 27, 2015 Order of Hon. W. Gerard Asher, Justice of the New York State
Supreme Court, Suffolk County "so ordering" the Stipulation of Settlement between the Town of
Southampton and Michael Hurley, in which Michael Hurley admits, *inter alia*, to being in
contempt of a preliminary injunction by allowing the Property to be used in a transient rental, in
violation of the Southampton Town Code) [DE 20-13]; and Exhibit L (July 17, 2017 "Order of
Conditional Discharge" in *People v. Michael Hurley*, C.C. # 16-070922, signed by Town Justice
Deborah Kooperstein) [DE 20-16].

[10]   Plaintiff's opposition papers address the incident in more detail than his Complaint.
In his "Preliminary Statement in Opposition," Plaintiff states that "Mr. Glogg informed Plaintiff
that there was an arrest warrant issued by the Southampton Town Justice Court.  Plaintiff asked
to see the warrant and Mr. Glogg refused to present any paperwork or warrant."  Pl.'s Prelim.
Stat. in Opp'n. at 4.  The Court, however, does not consider these allegations as part of the
instant analysis.  *See K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209
(S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for
the first time in opposition to Defendants' motion to dismiss.").

Plaintiff's false arrest claim in their motion papers at all, let alone whether there existed probable cause for the arrest.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). "Under New York law, the elements of false arrest are (1) defendant's intentional, unjustified, and unprivileged confinement of plaintiff and (2) plaintiff's awareness of the confinement." *Rodriguez v. City of New York*, 535 F. Supp. 2d 436, 441 (S.D.N.Y. 2008). Taking these meager allegations "to raise the strongest arguments that they suggest," *McPherson*, 174 F.3d at 280, the Court finds that Plaintiff has, albeit barely, pleaded the elements of a Section 1983 false arrest claim as to this specific incident.[11] Therefore, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss be denied with respect to Plaintiff's false arrest claim.

### v. Fourteenth Amendment Due Process

#### a. **Brady** *Violation*

In his Complaint, Plaintiff invokes "Brady v. Maryland." *See* Compl. at 11, 12. In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady v. Maryland*,

---

[11]    Plaintiff alleges he was arrested at other times, including "in court next to his attorney for the second time in 3 years" in July 2017. Compl. at 13. The Court does not address any other incident of alleged unlawful arrest, as the Complaint fails to sufficiently allege facts to support a false arrest claim based on these other incidents.

373 U.S. 83, 87 (1963). There are three elements that must be pleaded to assert a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281-82.

Plaintiff grounds his *Brady* claim on the Defendants' failure to provide him with transcripts of the June 14, 2017 Board hearing on Plaintiff's appeal of the revocation of his rental permit, *see* Compl. at 11 (¶7), and also, although less clearly, on the failure of the Town Attorney's office to provide unspecified discovery during his prosecution. *Id.* at 11 (¶ 2) and 12 (¶ 5). In his pleading, Plaintiff asserts the following:

> The Town Attorney was determined to take the Plaintiff to trial while denying the Plaintiff full discovery of evidence held by the prosecution. Lack of discovery before trial violates Brady vs. Maryland disclosure procedures as well as Section 15 of the U.S. Judiciary Act. The Plaintiff's lawyer Patrick Gunn requested in writing[12] all discovery materials prior to a trial date (Exhibit Q). The only evidence provided by the Town Attorney for the affidavits coerced from the Plaintiff's tenants while the tenants were under duress. The affidavits were not notarized and could not be used in the trial. There was no witness list provided to the defense. This is an act to intimidate the witness and force them to plead guilty to incarcerate the Plaintiff without due process.

Compl. at 11. Exhibit Q referenced here is the May 16, 2017 letter from Plaintiff to the Town Attorney demanding, pursuant to New York CPL § 240.20, "all Brady materials" and "all evidence required to be produced related to the complaints" on July 6, 2016, July 16, 2016, August 13, 2016, August 30, 2016, and "any other dates." *Id.*, Ex. Q.

The Defendants argue that there was no *Brady* violation with regard to the transcript of proceedings before the License Review Board nor any violation as to "unspecified discovery in

---

[12] Although the Plaintiff refers to Exhibit Q as a letter from his attorney Patrick Gunn, the letter is actually signed by Plaintiff, with Patrick Gunn cc'd on the letter.

the criminal proceedings in the Suffolk County Supreme Court in June 2017." Defs.' Mem. at 11-13. As to the transcript, Defendants point out that Plaintiff was a participant in the Licensing Review Board hearing and imply that Plaintiff was thereby aware of the information at issue. With respect to the criminal proceeding, Defendants state that Plaintiff was represented by counsel at the time who "certainly had the opportunity to raise any procedural irregularities during the various court appearances wherein he represented the plaintiff, or in a state court proceeding." *Id.* at 13. Defendants also maintain that this is "not the type of 'exculpatory evidence' which the Brady rule envisions," although counsel does not state why explicitly. *Id.*

As to the transcript of the License Review Board hearing, Plaintiff has not stated a *Brady* violation. Even if by some stretch the hearing minutes could be construed as *Brady* material -- which the Court finds unlikely since Plaintiff actually attended the hearing -- Plaintiff himself attached to his Complaint the June 23, 2017 e-mail request he sent to Deborah Dillon at the Town of Southampton requesting the transcript, along with the response from Ms. Dillon:

**michael hurley** <thesebonaccompany@gmail.com>   Jun 23
to Richard, Thomas, ddillon

Hi Deborah, Can you please email me a copy of the decision that the LRB made regarding my appeal on June 14, 2017. I also need a copy of the transcripts from that meeting, including all of the sworn testimony of Richard Harris, Kenneth Glogg, and James Keating. Thank You. Sincerly, Michael Hurley

**Deborah Dillon** <DDillon@southamptontownny.gov        Jun 26
to me

The LRB does not have transcripts, you can FOIL a copy of the meeting in a CD, the fee is $3.00, you can utilize this form http://www.southamptontownny.gov/DocumentCenter/Home/View/611 and just cross out the word "Document" and replace with "LRB Meeting CD" with meeting date.

The decision letter is forth coming and it will be mailed return receipt to your address of the owner of 28 Club Lane in Remsenburg.

Thank you for your patience.


Deborah Dillon
Land Management
Building and Zoning Dept
Town of Southampton
116 Hampton Road
Southampton NY 11968
631-702-1822
ddillon@southamptontownny.gov


Compl., Ex. O. Consequently, no one was "withholding" or suppressing the Board meeting

transcript from the Plaintiff, and he was provided with specific information on how to obtain that

record. There is no indication he attempted to follow this procedure to obtain the transcript.

Significantly, the purported evidence withheld by prosecutors prior to the June 2017 trial

date and the July 17, 2017 court proceeding, raises a different issue. Read liberally, the

Complaint alleges that Defendants violated Plaintiff's due process rights when prosecuting him

for violating Town of Southampton Code § 270 prohibiting transient rentals. Plaintiff contends

that the Southampton Town Attorney essentially withheld evidence and did not provide a full

response to his May 15, 2017 New York "CPL Section 240.20 Demand for all Evidence Supporting all Complaints for Violation of Town of Southampton Town Code Chapter 270 on the Dates July 6, 2016, July 16, 2016, July 30, 2016, August 13, 2016, August 30, 2016." Compl., Ex. P (Motion to Dismiss) at 2; *id*. Ex. Q. Plaintiff's Complaint is fatally deficient, however, in that it does not state what specific information or documents Plaintiff alleges were not produced, nor does Plaintiff state how these documents were "exculpatory."

As to the 2015 violations prosecuted by the Town, Plaintiff entered into a Stipulation of Settlement on October 27, 2015. Compl. at 9; Defs.' Decl., Ex. I. That Stipulation included a plea of guilty to the violations, a fine, and the imposition of a permanent injunction. Defs.' Decl., Ex. I. Subsequently, Plaintiff was charged with further violations and his rental license was revoked in 2017. His appeal was heard by the License Review Board on June 14, 2017 and the revocation was upheld on July 12, 2017. *Id*., Ex. J. On July 17, 2017, Southampton Town Justice Deborah Kooperstein issued an "Order of Conditional Discharge" -- Plaintiff pleaded guilty and was convicted of two counts of violating Southampton Town Code § 270.9. *Id*., Ex. L (Order of Conditional Discharge). Pursuant to New York State Penal Law §§ 65.05 and 650.10, Justice Kooperstein placed Plaintiff on a conditional discharge for a period of one year and required him to remit a fine of $15,000 by September 26, 2017 or face resentencing to 90 days incarceration. *Id*. The documents show, and Plaintiff does not dispute, that he pleaded guilty to a number of charges in these two criminal proceedings.

The Court points out, that in addition to the Complaint's failure to identify what exculpatory evidence Plaintiff is referring to, there is a separate but essential reason why Plaintiff cannot maintain a Section 1983 claim based on an alleged *Brady* violation here. Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a claim for damages is "not cognizable under § 1983" if "a

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. In such circumstances, the claim is *Heck*-barred, and "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* As the Second Circuit has explained:

> "*Brady*-based § 1983 claims necessarily imply the invalidity of a challenged conviction in the trial (or plea) in which the *Brady* violation occurred" because "the remedy for a *Brady* violation is vacatur of the judgment of conviction and a new trial." *Poventud v. City of New York*, 750 F.3d 121, 132-33 (2d Cir. 2014) (en banc) (emphasis omitted). Thus, a *Brady* claim is not cognizable under § 1983 unless the challenged conviction has been invalidated.

*Johnson v. New York City Police Dept.*, 651 Fed. App'x. 58, 60 (2d Cir. 2016).

Even construing Plaintiff's Complaint in the manner that he proposes, the result is the same – Plaintiff's *Brady* claim is barred by *Heck*. Plaintiff has not alleged that his convictions in the Southampton Town Court, based on his guilty pleas, among other things, have been invalidated in any way. He has not alleged that he even tried to have his convictions invalidated through procedures available to him in the state system. *See McCollough v. Hale*, 15-CV-691, 2015 WL 7281643, at *3 (E.D.N.Y. Nov. 17, 2015) (finding where plaintiff did not allege that his conviction had been invalidated and he in fact was still incarcerated, his Section 1983 claim was barred by *Heck* "and must be dismissed"); *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (holding that *Brady* claims are not cognizable under Section 1983 where the challenged conviction has not been invalidated). Moreover, leave to amend the complaint as to this claim would be futile because an amendment cannot cure the deficiency. *Johnson*, 651 Fed. App'x. at 61.

Based on the foregoing analysis, the Court respectfully recommends to Judge Seybert that Plaintiff's claim alleging a *Brady* violation be dismissed.

### b.      *Malicious Abuse of Process*

Plaintiff asserts a claim titled "Abuse of Power" on page 11 of his Complaint.  To the extent these allegations and others in the Complaint state a cognizable claim, the Court construes them to be a Section 1983 abuse of process claim.  "To prevail on a claim for abuse of process under Section 1983 or New York law, a plaintiff must establish that the defendant: (1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 164 (E.D.N.Y. 2016) (citations and internal quotation marks omitted).  Importantly, a plaintiff alleging a Section 1983 abuse of process claim must allege that defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.  In other words, the proper use of legal process based on an improper or malicious motive such as a desire for retaliation is insufficient to satisfy the 'collateral objective' requirement." *Slater v. Mackey*, No. 12-CV-04325, 2015 WL 6971793, at *10 (E.D.N.Y. Nov. 10, 2015) (quoting *Saving v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) and *Pinter v. City of New York*, 976 F. Supp. 2d 539, 568 (S.D.N.Y. 2013)).

The Court finds that the allegations in the Complaint are insufficient to plausibly suggest that the Town, through its officials, "aimed to achieve a collateral purpose beyond or in addition to [Plaintiff's] criminal prosecution." *Slater*, 2015 WL 6971793, at *10.  While the Complaint is full of conclusory assertions about the motivations of Glogg, Larios, and the Town Attorney, even accepting these conclusory statements as true, there is no indication that the Town's objective was anything beyond or in addition to Plaintiff's prosecution for violation of the transient rental law and other provisions of the Town code.  Moreover, "while the law is not

entirely settled on this point, the weight of authority holds that the presence of probable cause

negates a claim for abuse of criminal process." *Id.* (quoting *Pinter*, 976 F. Supp. 2d at 568-69).

Documents of which the Court takes judicial notice indicate that Plaintiff was convicted, twice,

for violating different provisions of the Town code. *See* Defs.' Decl., Exs. I, L.   Plaintiff's

conviction further bolsters the Court's conclusion that he has failed to plead, and is likely unable

to plead, that Defendants possessed an "intent to do harm without excuse or justification" and

prosecuted Plaintiff "in order to obtain a collateral objective that is outside the legitimate ends of

the process." *Fielder*, 222 F. Supp. 3d at 164.

As a result, the Court respectfully recommends to Judge Seybert that to the extent

Plaintiff attempts to plead a malicious abuse of process claim, such claim be dismissed.

### c.     Permit Revocation

In "Count Three: Obstruction of Justice," Plaintiff states that on May 5, 2017, his valid

rental permit "was revoked by the Town Attorney's Office without adjudication which is in

violation of the due process clause of the Fourteenth Amendment of the U.S. Constitution."

Compl. at 10.   "To state a procedural due process claim, if a plaintiff has demonstrated a

deprivation of a property interest . . . he or she must demonstrate that the deprivation occurred

without due process." *S.C. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-1672, 2012 WL

2940020, at *9 (S.D.N.Y. July 18, 2012).   Significantly, "it is not the deprivation of property or

liberty that is unconstitutional; it is the deprivation of property or liberty *without due process of*

*law*—without adequate procedures." *Daniels v. Williams*, 474 U.S. 327, 337 (1986) (Stevens, J.,

concurring) (emphasis in original).

Defendants argue that prior to revocation of his rental permit, Plaintiff received all the

process to which he was entitled and therefore he cannot sustain a claim alleging a deprivation of

procedural due process. *See* Defs.' Mem. at 9-11. The Complaint itself states that Plaintiff's rental permit was revoked on May 5, 2017. As Defendants point out, Plaintiff was issued numerous appearance tickets between 2014 and 2016. *See* Defs.' Decl., Exs. B – J. Plaintiff faced these charges in court with the assistance of counsel, and on October 27, 2015, and July 17, 2017, he pleaded guilty to violations of the Town code relating to rentals. *See id.*, Exs. I, L. Subsequent to the revocation of his permit, he appealed the decision to the License Review Board, which ruled against him. *See id.*, Ex. K. Thus, Plaintiff's own description of events in his pleadings makes the case that prior to the revocation of his rental permit, he was afforded adequate process. In addition, "[a] deprivation of property is not threatened if the violation is not contested." *Brancato v. City of New York*, 244 F. Supp. 2d 239, 243 (S.D.N.Y. 2003). The fact that Plaintiff pleaded guilty to multiple code violations, including violation of the transient rental law, renders his claim that he was harmed by a denial of due process a nullity.

Based on the foregoing information, the Court respectfully recommends to Judge Seybert that Plaintiff's claim alleging a violation of his procedural due process rights with respect to the revocation of his rental permit be dismissed.

### d.    *Other Due Process Claims*

Plaintiff's additional due process claims are premised upon the same factual allegations underlying his Fourth Amendment claims. For this reason, to the extent Plaintiff attempts to plead a violation of his Fourteenth Amendment *procedural* due process rights beyond those addressed above, these claims should be dismissed as duplicative. *See Levantino v. Skala*, 56 F. Supp. 3d 191, 203 (E.D.N.Y. 2014) ("Plaintiff's procedural due process claim cannot be predicated upon the same factual basis as his Fourth Amendment false arrest and false imprisonment claims.") (collecting cases); *see also Perry v. Kozuch*, No. 14-cv-1026, 2017 WL

1025663, at *6 (D. Conn. Mar. 16, 2017) ("As a matter of law, [plaintiff] cannot bring a Fourteenth Amendment procedural due process claim based on facts that could support a Fourth Amendment false arrest or false imprisonment claim.").

Similarly, to the extent Plaintiff attempts to assert *substantive* due process claims arising from his prosecution by the Town, such claims are also subsumed in his Fourth Amendment claims and should be dismissed.[13] *See Jackson ex rel. Jackson v. Suffolk Cnty.*, 87 F.Supp.3d 386, 399 (E.D.N.Y. 2015) ("Because the Fourth Amendment provides the source for a claim under Section 1983 premised upon an allegedly false arrest, false imprisonment, or malicious prosecution, plaintiffs cannot state a substantive due process claim against defendants based on such conduct.").

Even if the Court were to review Plaintiff's allegations within the framework of Fourteenth Amendment substantive due process, Plaintiff's allegations do not plausibly state that the Town's conduct "shocks the conscience" so as to rise to the level of a violation of his substantive due process rights. *See Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) ("Government conduct may be actionable under section 1983 as a substantive due process violation if it 'shocks the conscience.'") (quoting *Rochin v. California,* 342 U.S. 165, 172 (1952)); *Lombardi v. Whitman,* 485 F.3d 73, 81 (2d Cir. 2007) ("In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity.").

For the above reasons, to the extent Plaintiff attempts to plead Fourteenth Amendment procedural due process claims above and beyond those addressed here, or substantive due

---

[13]    It appears that to the extent Plaintiff is attempting to plead a substantive due process claim, that attempt is likely found in "Count 7: Intentional Infliction of Emotional Stress." Compl. at 15.

process claims, the Court respectfully recommends to Judge Seybert that these claims be dismissed.

## vi.    Fair Housing Act

On page 5 of the Complaint, Plaintiff alleges that "[t]he independent and negligent actions of the Town's Officials interfered with the civil rights and liberties of the Plaintiff who is protected under 42 USC 3604 and 3617 of The Fair Housing Act."  Compl. at 5.  On the following page, Plaintiff purports to quote from 42 U.S.C. § 3604 & § 3617.[14]  *See id.* at 6.

The Fair Housing Act "broadly prohibits discrimination in housing.  Specifically, it prohibits discrimination against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status . . . national origin or disability."  *Avila v. Basics Inc.*, No. 17-CV-8916, 2017 WL 5565226, at *1 (S.D.N.Y. Nov. 20, 2017) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979) and 42 U.S.C.§ 3604(b)).  The Fair Housing Act "also forbids retaliation against persons who have previously asserted their rights under the FHA."  *Avila*, 2017 WL 5565226, at *1.

Defendants argue that Plaintiff fails to state a Fair Housing Act claim because "the Complaint is silent as to on what basis the plaintiff believes the defendants discriminated against him, whether on the basis of his race, color, religion, sex, national original, [*sic*] familiar status

---

[14]   Plaintiff states:  "Section 42 U.S.C. } 3604 [*sic*] states 'it shall be unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provisions of services or facilities in connection therewith because of race, color, religion, sex, familial status, or national origin.'"  *Id*. at 6.  Plaintiff goes on to state:  "The Acts 42 U.S.C. } 3617 [*sic*] states 'It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.'"  *Id.*

or disability." Defs.' Mem. at 20. The Court agrees. There are no allegations in the Complaint

to support an inference that Defendants discriminated against Plaintiff on any basis that would

suggest liability under the Fair Housing Act. Accordingly, the Court respectfully recommends to

Judge Seybert that to the extent Plaintiff purports to assert a Fair Housing Act claim, such a

claim be dismissed.

### vii. Federal Claims Asserted in Plaintiff's Opposition Papers

Defendants argue that for the first time in his opposition papers Plaintiff attempts to

directly challenge the constitutionality of the transient rental law, and because of this, the Court

should not entertain a facial challenge to the ordinance. *See* Defendants' Memorandum in Reply

("Defs.' Reply") [DE27-2] at 1. The Court notes that in a limited number of places, Plaintiff

appears to be stating an opinion as to the legality of the transient rental law: (1) under

"Jurisdiction and Venue," Plaintiff states "Federal Courts can determine that legislation passed

by a municipality is unconstitutional," Compl. at 3; and (2) in the "Summary" section of his

Complaint, Plaintiff states that "the critical issue is whether the tenants are using the property for

ordinary living purposes such as sleeping and eating, not the duration of the rental," and

"[r]estrictive regulations and laws on short term rentals considered by other State Courts have

almost universally held that in and of themselves they are legal and permissible." *Id*. at 16.

Plaintiff also seems to assert that the transient rental law, or some other Town action, violates the

First Amendment. *See id*. at 5 ("Southampton Town is violating US Constitutional Law of

Peaceful Assembly by restricting the time duration of the rental property while disregarding the

quality and character of the rental.").

Despite these fleeting references to the facial legality of the transient rental law, or some

other Town action, Plaintiff's *Complaint* does not appear to be asking for the Court to determine

the constitutionality of the transient rental law or any other part of the Town code.  Rather,

Plaintiff's Complaint, to the extent that it can be construed to assert a coherent set of claims,

seeks redress for grievances stemming from the Town's alleged harassment, prosecution, and

enforcement of the Town code.  Plaintiff's *opposition papers*, however, very clearly ask this

Court to find the transient rental law facially unconstitutional.  *See* Pl.'s Prelim. Stat. in Opp'n.

at 8 ("Plaintiff requests that the Federal Court United States District recognize that the Town of

Southampton Regulation Chapter 270-1(C), 'A transient rental is prohibited' is

unconstitutional.").  Similarly, Plaintiff invokes several federal statutes for the first time in his

opposition papers.  For example, he appears to allege liability under 42 U.S.C. § 1982, *see id.*

at 2, and 42 U.S.C. § 1985.  *See id.* at 8.  Plaintiff also contends for the first time in his

opposition papers that there are deficiencies in the accusatory instruments underlying his

criminal prosecution.  *See* Pl.'s Opp'n. at 4.

     It is well settled that "[p]laintiffs cannot amend their complaint by asserting new facts or

theories for the first time in opposition to Defendants' motion to dismiss."  *K.D. ex rel. Duncan

v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013); *Williams v. Black Entm't

Television, Inc.*, No. 13-CV-1459, 2014 WL 585419, at *11 (E.D.N.Y. Feb. 14, 2014) ("Plaintiff

cannot amend his pleadings through an opposition brief."); *Fadem v. Ford Motor Co.,* 352 F.

Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is longstanding precedent in this circuit that parties

cannot amend their pleadings through issues raised solely in their briefs.").  The Court therefore

declines to address the claims Plaintiff raises for the first time in his motion papers.[15]

---

[15]  Defendants' reply memorandum addresses the substance of the Plaintiff's newly
asserted claims.  While the Court declines to consider Plaintiff's arguments on these claims, the
Court notes that Plaintiff's newly asserted claim under 42 U.S.C. § 1985 is barred by the
"intracorporate conspiracy doctrine" as Defendants point out.  *See* Defs.' Reply at 7-8.  "The
intracorporate conspiracy doctrine 'bars conspiracy claims alleging concerted action by

In light of the fact that Plaintiff does not adequately assert in his Complaint (1) a constitutional challenge to the Town's transient rental law, (2) claims under 42 U.S.C. §§ 1982 or 1985, or (3) any challenge to the validity of the accusatory instruments underlying his prosecution, the Court respectfully recommends to Judge Seybert that to the extent Plaintiff is attempting to assert these claims, they be dismissed.

## 2. *Claims Arising Under State Law*

The Court has addressed all but three of the claims Plaintiff purports to assert. These remaining claims are "Tortious Interference" (Count I), "Harassment" (Count V), and "Infliction of Emotional Distress" (Count VII). To the extent these are viable causes of action, they arise under state law. Defendants argue that Plaintiff's state law claims must be dismissed because "[t]he Complaint does not allege that plaintiff served the Town with a Notice of Claim (which in fact, he did not), and therefore [Plaintiff's state law] claims must be dismissed." Defs.' Mem. at 23. Plaintiff does not address this argument in his opposition papers, nor does Plaintiff provide any documentation showing that he served a Notice of Claim on the Town of Southampton.

"[A]ctions against [a] municipality to recover for Federal and State civil rights violations are not subject to the notice of claim requirements." *Liu v. New York City Police Dep't*, 216 A.D.2d 67, 68, 627 N.Y.S.2d 683, 685 (1995). However, a Notice of Claim is a condition precedent to the assertion of a state tort claim against a municipality. "New York General Municipal Law Section 50 requires that before a plaintiff asserts state tort claims against a

---

employees and/or the heads of various departments within a single municipal entity, at least where the complaint fails to allege that the various [municipal] entities were effectively acting as separate entities in carrying out the alleged conspiracy.'" *Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009) (quoting *Dunlop v. City of New York,* No. 06 Civ. 0433, 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008)).

municipal entity *or its employees*, he must serve a notice of claim within ninety days after the claim arises." *Garcia v. City of New York*, No. 15 CIV. 7470, 2018 WL 2085335, at *6 (S.D.N.Y. May 3, 2018) (emphasis in original) (citing N.Y. Gen. Mun. Law §§ 50-e, 50-i). "Federal courts exercising supplemental jurisdiction over state law claims must strictly construe New York's notice of claim requirements." *Garcia*, 2018 WL 2085335, at *6 (citing *Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012)).

Since Plaintiff does not assert that he served a Notice of Claim on the Town, and since he has produced no documentation showing his compliance with N.Y. Gen. Mun. Law § 50-e, the Court respectfully recommends to Judge Seybert that Plaintiff's claims for "Tortious Interference" (Count I), "Harassment" (Count V), and "Infliction of Emotional Distress" (Count VII) be dismissed.

### C.    Municipal Liability Under Section 1983

#### 1.    *Legal Principles*

42 U.S.C. § 1983 imposes liability on, and creates a federal right of action against, anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the [federal] Constitution and [federal] laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (quoting 42 U.S.C. § 1983).  To raise a successful claim under Section 1983, a plaintiff must sufficiently allege "that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 316-17 (E.D.N.Y. 2014) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted)).

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original).  Rather, to state a Section 1983 claim against a municipality, "a plaintiff must assert that the alleged violations were committed pursuant to an official policy, practice or custom." *Holland v. The City of New York*, No. 14 Civ. 5517, 2016 WL 3636249, at *9 (S.D.N.Y. June 24, 2016) (citing *Monell*, 436 U.S. at 694); *see Feliciano v. Cty. of Suffolk*, 419 F. Supp. 2d 302, 312 (E.D.N.Y. 2005).  To successfully set forth such a claim, a plaintiff is required to plead three elements:  "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) (quoting *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir.2010)); *see Simms v. City of N.Y.*, 480 Fed. App'x. 627, 629 (2d Cir. 2012).  In order to establish the first element (*i.e.*, the existence of a policy or custom), a plaintiff must allege that one of the following exists:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) (quoting *Brandon v. City of New York,* 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not 'suffice if it tenders naked assertion[s] devoid of

further factual enhancement.'" *McLennon*, 171 F. Supp. 3d at 94 (quoting *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015)). Consequently, to survive a motion to dismiss a municipal liability claim, "a plaintiff must allege facts tending to support, at least circumstantially, an inference that . . . a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)); *see Tieman*, 2015 WL 1379652, at *13 ("Mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details.").

### 2. Application to the Complaint

Plaintiff asserts claims pursuant to Section 1983 against the Town for multiple constitutional violations, as discussed above. Plaintiff's factual assertions are varied and cover a period of several years. However, the gravamen of Plaintiff's Complaint is that the Town, acting through its Code Enforcement Officers, Town Attorney, and License Review Board, engaged in a multi-year campaign to harass, intimidate, and (unlawfully) prosecute Plaintiff using the Town's "transient rental law" as pretext. *See generally* Compl. at 3-5 (listing "Allegations Common to All Counts").

With regard to the four methods a litigant may use to plead Section 1983 municipal liability, the Complaint on its face cannot not satisfy the first method. That is, the Complaint does not set forth facts to support the existence of "a formal policy officially endorsed by the [Town]" to harass, intimidate, and unjustifiably prosecute its citizens. *Tieman*, 2015 WL 1379652, at *13. Nor does the Complaint plausibly suggest that there is "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a

supervising policy-maker must have been aware." *Id.* To the contrary, the thrust of Plaintiff's grievance is that the actions of the Town and its officials are directed almost exclusively at him – he alleges he has been "singled out among 1,000 similarly situated homes in the jurisdiction of the Town," Compl. at 14, and "Defendants have maliciously targeted Plaintiff through the [c]onduct of Town Officials." *Id.* at 5. Thus, Plaintiff cannot successfully utilized either the first or second method of pleading Section 1983 municipal liability.

Nor has the Plaintiff asserted the existence of municipal liability by pointing to allegations that the Town failed to train or supervise its employees. The Complaint contains a single allegation that "Defendants failed to educate Southampton Town Code Enforcement Officials about basic civil rights protections under the United States Constitution." Compl. at 5. However, the Complaint is filled with allegations that Town employees, namely, Glogg, Larios, and the Town Attorney, acted *intentionally* and with malice. *See, e.g.*, *id.* at 4, 5, 12, 13. Indeed, the purportedly malicious and unethical motivations of Town officials appear to be the primary focus of the Plaintiff's lawsuit. *See, e.g.*, Pl.'s Opp'n at 2 ("As Plaintiff will prove, Mr. Glogg does not meet the high moral and ethical standards that a government employee must exemplify by law."). The Complaint is replete with allegations of malicious intent on the part of Town officials -- not with facts to support a "failure to train/supervise" theory of municipal liability.

The only remaining method by which Plaintiff can state a Section 1983 claim for municipal liability is by providing facts sufficient to plausibly suggest that his rights were violated by actions of "government officials responsible for establishing [Town] policies." *Tieman*, 2015 WL 1379652, at *13. "A plaintiff bears the burden of establishing an official's status as a final policymaker with proof of the official's scope of employment and his role within the municipal or corporate organization." *Pignone v. Vill. of Pelham Manor*, No. 10-CV-2589,

2014 WL 929805, at *4 (S.D.N.Y. Mar. 6, 2014). As previously noted, to the extent the Complaint enmeshes any Town employees in a substantive way, it implicates Code Enforcement Officers Glogg and Larios, the Town Attorney, and the members of the Board. However, Plaintiff has not stated any facts suggesting that either Code Enforcement Officer Glogg or Larios, or any member of the Board, are final policymakers for the Town with respect to the actions of which Plaintiff complains.

As to the Town Attorney, the Complaint contains the following assertions: (1) "Town Attorney James Burke admitt[ed]" in a recent article that "many are not complying" with a Town ordinance governing rentals, Compl. at 6; (2) "[i]n October of 2015 the Plaintiff entered into a settlement with the Town Attorney to bring an end to all of the transient rental violations alleged by the Town up to October of 2015," *id.* at 9; (3) in November 2015 Plaintiff was arrested and "the Town Attorney ordered his release without charging the Plaintiff," *id.*; (4) "[i]t is not the duration of the rental that matters[,] it is the character of the rental that brings the 'stability' to the neighborhood that Town Attorney James Burke seeks," *id.* at 10; (5) on May 5, 2017, the acting Town Attorney "demanded that Plaintiff plead guilty to 2 appearance tickets . . . [and] threatened to revoke the valid rental permit of the Plaintiff if he did not plead guilty," *id.*; (6) [o]n May 5, 2017 the valid Rental Permit of the Plaintiff was revoked by the Town Attorney's Office," *id.*; (7) the Town Attorney "ignored" Plaintiff's motions to dismiss, *id.* at 11; (8) "[t]he Town Attorney was determined to take the Plaintiff to trial while denying the Plaintiff full discovery of evidence held by the prosecution," *id.*; (9) the Town Attorney notified Plaintiff's attorney that a potential settlement was "off the table," that the case would continue to trial, that Plaintiff was going to face "4 counts," and that he could face two years in jail if convicted, *id.* at 12; (10) "[t]he Town Attorney's Office did not fulfill their duty to update the defendant on the

status of his case in a timely fashion," which led to Plaintiff's arrest, *id*.; (11) "[t]he Town Attorney's Office is well aware of the numerous (perhaps 1,000) rentals available on the various websites that offer short term rentals for less than the required 2 weeks," *id*. at 14; and (12) "[t]he Town of Southampton through its Town attorneys demonstrated a pattern of wrongdoing, deceit, and collusion with the Town's Code Enforcement Office." *Id*. at 17.

Plaintiff's allegations are problematic in that they are not clear with respect to exactly who in the capacity of "Town Attorney" is alleged to have violated Plaintiff's rights. Notwithstanding this fact, the Court reads Plaintiff's allegations "to raise the strongest arguments that they suggest," *McPherson*, 174 F.3d at 280, and finds that the Complaint sufficiently alleges that the Town Attorney is a Town official who has final policymaking authority with respect to enforcement of the "transient rental law," the Town code generally, and Plaintiff's prosecution thereunder, for purposes of Section 1983 municipal liability.[16] *See Norton v. Town of Islip,* No. 04–CV–3079, 2009 WL 804702, at *28 (E.D.N.Y. Mar. 27, 2009) (declining to dismiss municipal liability claim based in part on decision of Town Attorney's office to prosecute property owners to enforce changes to certificates of occupancy without providing notice and an opportunity to be heard), *rev'd on other grounds by* 378 Fed. App'x. 85, 90 (2d Cir. 2010); *cf. Norton v. Town of Islip*, 678 Fed. App'x. 17, 22 (2d Cir. 2017) (finding no municipal liability where Plaintiff "failed to allege any facts connecting [the] Town Attorney [ ] to the decision to prosecute" Plaintiff, and where Plaintiff failed to allege that the Deputy Town Attorney whom Plaintiff claims instigated a Town Code investigation, had final policymaking authority over

---

[16] "Whether an official has final policymaking authority is a question of state law." *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 374 (S.D.N.Y. 1999) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Whether municipal attorneys (as opposed to ADAs) can be considered final policymakers for purposes of municipal liability in New York does not appear to be a well-developed issue.

whether or not to bring prosecutions); *cf. Frank Sloup & Crabs Unlimited, LLC v. Loeffler,* 745 F.Supp.2d 115, 124 n.2 (E.D.N.Y. 2010) (noting that a statement by a Deputy Town Attorney at an Article 78 proceeding could be "[a]n alternative theory" that would be "sufficient to create liability for the Town"); *Mitchell v. Town of Southampton,* 238 F.R.D. 368, 370 (E.D.N.Y. 2006) (granting discovery request for "job descriptions and setting of qualifications for" new Town Attorneys, Assistant Town Attorneys, or Deputy Town Attorneys, due to relevance to the "disputed issue" of whether an Assistant Town Attorney was a policymaker); *see also Dosiak v. Town of Brookhaven*, No. CV 16-6658, 2017 WL 7048912, at *11 (E.D.N.Y. Nov. 27, 2017) (finding municipal liability where action in State Supreme Court alleging code violations "was instituted in the name of the Town, with the Town Attorney herself submitting an affidavit in support of the application for relief, and thus it may reasonably be inferred that the Town Board authorized its initiation."). Accordingly, Plaintiff has sufficiently pleaded the existence of a Town policy or custom for purposes of Section 1983 municipal liability.

In addition to sufficiently pleading a municipal policy or custom, a plaintiff must allege that such a policy or custom subjected the plaintiff to the deprivation of a constitutional right in order for municipal liability to attach. *McLennon*, 171 F. Supp. 3d at 94. As previously discussed, Plaintiff has sufficiently pleaded one claim arising under federal law: false arrest resulting in a deprivation of his Fourth Amendment rights. Therefore, Plaintiff has pleaded facts sufficient to invoke municipal liability stemming from his false arrest claim.

### D. Other Deficiencies

#### 1. *Plaintiff Cannot Maintain a Claim against Individual Town License Review Board Members*

Plaintiff names as parties to this action "Southampton Town License Review Members John and Jane Does 1 – 5." Compl. at 1. Although he does not specify, the Court assumes

Plaintiff asserts his claims against the members of the License Review Board in their individual capacities, since (1) a suit against members of the Board in their official capacities is no different from a suit against the Board itself, *see Monell*, 436 U.S. at 690 n.55 (noting that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); and (2) a suit against the Board is no different from a suit against the Town.  *See Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999) ("Under New York law, departments . . . which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *see also* Town of Southampton Code, § 143-11.  The Town is already named as a party, and its liability has been addressed.  Therefore, the Court assumes that Plaintiff has sued the Board members in their individual capacities.

The allegations in the Complaint with respect to the Board are limited to the following: (1) "Defendants [*sic*] denial of a New York State mandated stay of the Plaintiffs [*sic*] Rental Permit Revocation upon review by The Southampton Town License Review Board,"  Compl. at 4; (2) two weeks before his trial "Plaintiff appeared before the Southampton Town License Review Board to appeal the Rental Permit Revocation and ask for the mandatory stay that is granted to the Permit holders under N.Y. State Law.  One and only one neighbor Suffolk County Detective James Keating testified under oath that he calls Code Enforcement as soon as he sees a car enter the Plaintiff's driveway," *id* at 10-11; (3) Plaintiff was denied the transcript of his appeal hearing despite "numerous emails between the Plaintiff and Deborah Dillon of the License Review Board," *id*. at 11; and (4) a reference to "John and Jane Does 1-5" acting in cooperation with the Town and its attorneys to Plaintiff's detriment.  *Id*. at 17.

In the Court's view, these allegations are insufficient to plausibly state a cause of action against the individual members of the Board. It seems Plaintiff's primary grievance against the Board members is their decision to affirm the revocation of his rental permit. *See* Defs.' Decl., Ex. K. The instant lawsuit is not the proper vehicle for such a claim. The Court therefore respectfully recommends to Judge Seybert that all claims asserted against the Board members in their individual capacities be dismissed.[17]

### 2.     *Plaintiff Cannot Maintain a Claim against the Town Attorney*

Although the Town Attorney is not named as a party in the caption of the Complaint, several passages suggest that Plaintiff is attempting to sue the Town Attorney in his individual capacity. On page 10 of the Complaint under "Count Three: Obstruction of Justice," Plaintiff asserts that the Town Attorney is liable under the Fourteenth Amendment for revocation of Plaintiff's rental permit "without adjudication." Compl. at 10. Page 17 of the Complaint, titled "Relief Demanded," suggests that Plaintiff is also attempting to sue the Town Attorney under New York Judiciary Law § 487. *See id.* at 17. Specifically, Plaintiff states he "is entitled to

---

[17]   The Court also recognizes without deciding that the Board members may be entitled to qualified immunity as government officials, or, though less likely, to absolute immunity as members of a quasi-judicial body acting in its quasi-judicial capacity. Multiple cases in this Circuit have recognized that municipal bodies such as zoning boards of appeal operate in a quasi-judicial capacity and are entitled to absolute immunity under state law. *See Alfano v. Vill. of Farmingdale*, 693 F. Supp. 2d 231, 233 (E.D.N.Y. 2010) ("In New York State, zoning boards of appeal and their members are immune from suit for actions taken in their quasi-judicial capacity.") (citing cases); *Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.*, 192 F. Supp. 2d 143, 157 (S.D.N.Y. 2002) (finding deliberative proceedings of a zoning board of appeal to be quasi-judicial in nature and the acts of the board to be protected by absolute immunity). However, this line of reasoning has been criticized when applied to extend immunity under federal law in the absence of an analysis of the factors enumerated in *Cleavinger v. Saxner*, 474 U.S. 193 (1985), which constitutes the federal standard for determining the applicability of absolute immunity. *See Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 366 (S.D.N.Y. 2011).

statutory treble damages under N.Y. Judicial Law {487 [*sic*] for the blatant injuries caused by the defendants named above and by John and Jane Does 1-5, who acted in cooperation with . . . the Town and its attorneys." *Id.* In support of his claim against the Town Attorney, Plaintiff argues that "New York Judiciary Law {487 [*sic*] has no exceptions for district attorneys, town attorneys, or their assistants." *Id.*

Section 487 provides as follows:

> An attorney or counselor who:
>
> 1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
>
> 2. Willfully delays his client's suit with a view to his own gain; or, willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,
>
> Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. Judiciary Law § 487.

Contrary to the legal assertion made by Plaintiff that Section 487 "has no exceptions for district attorneys, town attorneys, or their assistances [*sic*]," Compl. at 17, in *Rudow v. City of New York* the Second Circuit found unpersuasive the argument that Section 487 applies to the "prosecutorial acts of municipal attorneys," and determined that "[t]he same principles that render [a municipal attorney acting in a prosecutorial capacity] absolutely immune from personal liability under federal law also protect her under New York law." *Rudow v. City of New York*, 822 F.2d 324, 329 (2d Cir. 1987). There is no indication in the Complaint that the Town Attorney was not acting in a prosecutorial capacity during his interactions with Plaintiff. For this reason, he is entitled to absolute immunity. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 340-42

(2009) (summarizing the evolution and scope of absolute prosecutorial immunity).  This

immunity extends to claims under Section 487 pursuant to *Rudow*.  *See Rudow*, 822 F.2d at 329.

Given the settled law in this area, the Court respectfully recommends to Judge Seybert

that to the extent Plaintiff attempts to assert a claim against the Southampton Town Attorney in

his individual capacity -- under Section 487 or on a different theory of liability -- such a claim be

dismissed.[18]

### E.    Qualified Immunity

Counsel argues that the Individual Defendants are protected from liability by qualified

immunity.  *See* Defs.' Mem. at 20-21.  "Qualified immunity 'shields [government] officers

acting in their official capacity from suits for damages . . . unless their actions violate clearly-

established rights of which an objectively reasonable official would have known.'"  *Jones v.*

*Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (quoting *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.

1999)).  When a defendant asserts qualified immunity, "a court must consider two questions:  (1)

whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of

a statutory or constitutional right, and (2) whether that right was clearly established at the time of

the alleged violation."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

---

[18]    To the extent that Plaintiff attempts to assert a claim against "Judge Kooperstein," *see* Compl. at 12 (stating that Judge Kooperstein "refused the request of the Plaintiff to withdraw the warrant and enable him to defend himself and exercise his right of Due Process under the Fourteenth Amendment on June 30, 2017"),  the Court respectfully recommends that such a claim also be dismissed.  Judge Kooperstein is protected by judicial immunity.  *See Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) ("[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.") (internal quotations omitted).

The Court has already addressed the liability of the individual Board members, *supra*. The Court's discussion here is therefore limited to the two other Individual Defendants, Glogg and Larios. Plaintiff has succeeded, albeit barely, in pleading a claim for false arrest in violation of his Fourth Amendment rights. According to the Complaint, this false arrest was perpetrated by Defendants Glogg and Larios. Therefore, the next question the Court must address is whether Plaintiff's rights under the Fourth Amendment were "clearly established" at the time of the alleged unlawful arrest. The Court has grappled with the issue of whether Plaintiff adequately pleaded a false arrest claim in the first instance. In the absence of specific facts underlying Plaintiff's thin assertions, this further Fourth Amendment analysis is also somewhat nebulous. Notwithstanding this difficulty, the Court draws the same inferences -- favorable to Plaintiff, as it must. As a result, the Court cannot say, at this time, that Plaintiff's Fourth Amendment right to be free from unreasonable seizure was not clearly established.

The Court makes this determination with the understanding that fact discovery will likely fill in the gaps underlying Plaintiff's claim. Importantly, while the existence of an immunity defense is often decided at the earliest possible stage in a litigation, it is not uncommon for courts to find a determination on qualified immunity premature at the motion to dismiss stage. *See, e.g., Looney v. Black,* 702 F.3d 701, 720 (2d Cir. 2012) (finding a determination on qualified immunity premature on motion to dismiss); *Taylor v. Vermont Dept. of Educ.,* 313 F.3d 768, 793 (2d Cir. 2002) (finding ruling on availability of the qualified immunity defense would be premature where ruling turned on factual questions that could not be resolved at motion to dismiss stage before discovery); *Taylor v. Wilde,* No. 11–CV–3608, 2012 WL 2860999, at *4 (E.D.N.Y. July 10, 2012) (declining to dismiss complaint on qualified immunity grounds on motion to dismiss); *Maloney v. Cnty. of Nassau,* 623 F. Supp. 2d 277, 292 (E.D.N.Y. 2007)

("Because this defense necessarily involves a fact-specific inquiry, it is generally premature to address the defense of qualified immunity in a motion to dismiss."); *Hamilton v. Fisher,* No. 10–CV–1066, 2012 WL 987374, at * 19 (N.D.N.Y. Feb. 29, 2012) (finding that "any adjudication as to the applicability of the qualified immunity affirmative defense would be premature since '[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation.'") (quoting *Denton v. McKee,* 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004)). That the factual circumstances of Plaintiff's alleged unlawful arrest have yet to be fleshed out provides an additional basis on which to deny qualified immunity to the individual Defendants at this time.

For the above reasons, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss Plaintiff's Complaint based on the qualified immunity of Glogg and Larios be denied at this time.

### F.     Summary of the Court's Recommendations

In summary, the Court respectfully recommends to Judge Seybert that all of the causes of action, with the exception of Plaintiff's Fourth Amendment claim for false arrest and his Section 1983 claim for municipal liability based on the false arrest claim, be dismissed.

### G.     Leave to Amend

It does not appear that Plaintiff has requested leave to amend his Complaint. However, the Court has considered whether Plaintiff should be given an opportunity to re-plead his various claims. "When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Aquino v. Prudential Life & Cas. Ins. Co.,* 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005); *see Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir. 2002)

("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them.").  A court should only deny a *pro se* plaintiff leave to amend when "it is 'beyond doubt that the plaintiff can provide no set of facts in support' of his amended claims." *Pangburn v. Culbertson,* 200 F.3d 65, 71 (2d Cir. 1999) (quoting *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)).

Even under this liberal standard, however, the Court may decline to provide a *pro se* plaintiff with an opportunity to re-plead if the Court finds that the plaintiff "cannot correct the defects in his federal claims" and therefore "any attempt to amend the pleading . . . would be futile."  *Shorter v. Rice,* No. 12 Civ. 0111, 2012 WL 1340088, at *5 (E.D.N.Y. Apr. 10, 2012); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[] of action is substantive; better pleading will not cure it.  Repleading would thus be futile. Such a futile request to replead should be denied.").

To the extent Judge Seybert gives Plaintiff leave to amend his Complaint, there are limited claims for re-pleading that are not futile given the applicable law cited in this Report and Recommendation.  This Court recommends that any re-pleading be restricted to the following claims:  (1) a Fourteenth Amendment Equal Protection claim asserting selective enforcement; (2) a Fourteenth Amendment Due Process claim for malicious abuse of process; and (3) a Fair Housing Act claim.  This Court recommends that all others cause of action asserted in the Complaint be dismissed and precluded from any re-pleading since such activity would be futile under the applicable law.  *See Ferrara v. Smithtown Trucking Co.*, 29 F. Supp. 3d 274, 279 (E.D.N.Y. 2014); *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir. 2008).

## VI.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that Defendant's motion to dismiss be DENIED with respect to Plaintiff's Fourth Amendment claim for false arrest and his Section 1983 claim for municipal liability based on the false arrest claim, but GRANTED with respect to all other claims asserted by Plaintiff.

## VII.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


                                                        SO ORDERED.

Dated: Central Islip, New York
       August 13, 2018

                                                        /s/ A. Kathleen Tomlinson
                                                        A. KATHLEEN TOMLINSON
                                                        U.S. Magistrate Judge